UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PHUNG THI THANH VO, | CASE NO. 2:25-cv-02244-DGE-GJL |
| Petitioner, | ORDER GRANTING PETITION FOR HABEAS CORPUS (DKT. NOS. 1, 7) |
| v. | |
| PAMELA BONDI et al., | |
| Respondents. | |

This matter comes before the Court on Petitioner Phung Thi Thanh Vo's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (Dkt. No. 1, 7.)  The Court has considered the materials filed in support of and in opposition to the petition, and the applicable law.  For the reasons addressed below, the Court GRANTS the Petition.

## I    BACKGROUND

### A. Petitioner's History

Petitioner was born to Vietnamese refugees in a refugee camp in Indonesia on approximately July 1, 1980.  (Dkt. No. 7 at 7.)  On September 5, 1980, Petitioner emigrated with

her parents to the United States and was lawfully admitted as a permanent resident. (*Id.*; Dkt. No. 15-1 at 3.) Between 2014 and 2016, Petitioner was arrested for and convicted of multiple criminal offenses. (Dkt. No. 15-1 at 2-4.) On July 14, 2016, Petitioner was detained by Immigration and Customs Enforcement ("ICE") officers and served with a Notice to Appear, which alleged Petitioner was removable because she had previously been convicted of two crimes "involving moral turpitude." (*Id.* at 3; Dkt. No. 15-2.) On January 18, 2017, an immigration judge ordered Petitioner released from custody under bond. (Dkt. Nos. 15-3 at 2; 15-4 at 2.)

  On January 27, 2017, ICE issued Petitioner an Order of Release on Recognizance. (Dkt. No. 15-4 at 2-4.) On September 8, 2017, Petitioner reported to the Intensive Supervision Appearance Program ("ISAP") office for a compliance interview and was arrested "due to multiple ISAP violations," including two "tracker missed callback[s]," three "face to face missed," and one "home visit failed." (Dkt. No. 15-5 at 3–4.) On December 14, 2017, an immigration judge ordered Petitioner removed in absentia. (Dkt. No. 15-6 at 2.) On June 15, 2018, Petitioner was arrested for possession of a controlled substance and subsequently taken into ICE custody. (Dkt. No. 15-7 at 3.) On September 13, 2018, because ICE had not effectuated her removal within the prescribed time, ICE issued Petitioner an Order of Supervision that required her, among other things, to "appear in person at the time and place specified, upon each and every request of the agency, for identification and for deportation or removal" and "that you do not commit any crimes while on this Order of Supervision," (Dkt. No. 15-8 at 2–4.) The Order advised Petitioner that "[a]ny violation of the above conditions may result in you being taken into Service custody." (*Id.* at 4.)

A declaration submitted by Jiarong Du, an ICE deportation officer, stated "[f]rom the time of Petitioner's release on [Order of Supervision], she repeatedly failed to report and her last contact with ICE prior to 2025 was October 15, 2018." (Dkt. No. 16 at 3.) On April 23, 2025, Petitioner was arrested by California law enforcement and subsequently taken into ICE custody. (Dkt. Nos. 15-10 at 2–5; 16 at 3.) ICE determined there was a significant likelihood of removal in the foreseeable future due to cooperation between the United States and Vietnam, and revoked Petitioner's Order of Supervision. (Dkt. No. 16 at 3.) However, Petitioner's travel document request was not completed until November 1, 2025; Officer Du explained that because the "documents can only be created with the active cooperation of Petitioner" and "must be translated into Vietnamese with a third-party translation service," "it can take some time to complete" a request. (*Id.* at 3–4.) On November 4, 2025, the travel document request was "approved by local management to be sent to the ERO headquarters division who communicates with [the] government of Vietnam." (*Id.* at 4.) At the time Officer Du submitted his declaration, the travel request documents remained pending. (*Id.*) Respondents have not attached any documents to the declaration that might show more precisely what has been submitted to or requested from the government of Vietnam.

### B. History of Vietnamese Refugee Removal

Vietnam has long refused to accept for deportation Vietnamese nationals who came to the United States as refugees before 1995. (Dkt. No. 7 at 7–8) (discussing the history of Vietnamese immigration to the United States as discussed in *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020)). Consequently, many Vietnamese nationals who are ordered removed "have continued to live and work in the United States and have regularly checked in with ICE in accordance" with order of supervision conditions. (Dkt. No. 1-2 at 3.)

On November 21, 2020, the United States and Vietnam entered into a Memorandum of Understanding ("MOU") regarding pre-1995 immigrants. (Dkt. No. 1-1 at 2, 7.) The purpose of the MOU is to "establish a process of review and issuance of travel documents for Vietnamese citizens ordered removed from the United States and to facilitate the acceptance of all such Vietnamese citizens[.] . . . The scope of this MOU is intended to apply to individuals who arrived in the United States before July 12, 1995." (*Id.* at 2.) Section 4 of the MOU is titled "Eligibility for Acceptance of Return." (*Id.* at 3.) Section 4 states that Vietnam intends to accept the removal of individuals who meet four conditions: the individual must (1) have Vietnamese citizenship and not the citizenship of any other country; (2) have been ordered removed by the United States and finished serving any U.S. prison sentence; and (3) have resided in Vietnam before arriving in the United States and not have the right to reside in any other country. (*Id.* at 3–4.) The fourth mandatory condition is redacted from the publicly disclosed version of the MOU filed by Petitioner (*see id.* at 4.), and Respondents have not disclosed any information about what that condition requires. Sections 5 and 6 of the MOU contain factors that the United States intends to consider before requesting travel documents for a Vietnamese citizen and that Vietnam intends to consider before accepting an individual ordered removed. (*Id.* at 4.) These factors are also redacted and have not been disclosed in this litigation.

Section 8 of the MOU is titled "Procedures for Verification and Issuance of Travel Documents." Under Section 8 of the agreement, ICE must request appropriate travel documents from Vietnamese officials before removal. (*Id.* at 5.) The documentation package is expected to contain a cover letter; the self-declaration form; a copy of the individual's final order of removal; copies of records related to the individual's criminal convictions and incarceration, if applicable; photographs and fingerprints; and copies of citizenship documents such as expired passports,

national identity cards, birth certificates, or expired travel documents. (*Id.*) After the request for a travel document is received, Vietnam "intends to issue the travel document" within 30 days "when the individual meets the eligibility criteria listed in Section 4 of this MOU." (*Id.*) For individuals who do not meet the eligibility requirement, the MOU sets out a process through which the United States and Vietnam will try to "resolve the case," which may include gathering additional information, convening a working group, considering "the humanitarian and family unity factors of the individual ordered removed," and conducting interviews. (*Id.* at 5–6.)

### C.  Procedural History

On November 10, 2025, Petitioner filed her writ of habeas corpus and a motion to appoint counsel. (Dkt. Nos. 1, 2.) On November 17, 2025, the Court (Leupold, J.) appointed Petitioner counsel, and ordered Respondents to show cause within 30 days why the writ of habeas corpus should not be granted. (Dkt. Nos. 5, 6.) On November 20, 2025, the Parties requested expedited briefing on the petition, and filed a stipulated motion that Respondents would not effectuate Petitioner's removal to a third country or remove Petitioner from this district while the action is pending, other than removal to Vietnam. (Dkt. Nos. 10, 11.) The Court granted both motions. (Dkt. No. 13.) Respondents filed a return memorandum on November 28, 2025. (Dkt. No. 14.) Petitioner filed a response on December 4, 2025. (Dkt. No. 17.)

## II     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV,

2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited. Specifically, a noncitizen "who violates any of the conditions of release may be returned to custody." 8 C.F.R. § 214.13(i)(1). Similarly, the government "may revoke an alien's release . . . if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. 8 C.F.R. § 214.13(i)(2).

Parallel to these limitations on the government's ability to revoke the release of a noncitizen whose removal is unlikely in the reasonably foreseeable future, the Supreme Court has held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). As the *Zadvydas* court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The

"presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–722 (W.D. Wash. 2025) (rejecting argument that detention period resets every time a noncitizen is detained); *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025) ("When calculating time spent in detention, courts aggregate nonconsecutive detention periods. The clock does not restart each time that a nonconsecutive detention begins for a noncitizen."); *Sied v. Nelson*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases).

### III  ANALYSIS

Petitioner's claims fall within three categories: (1) her continued detention violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a); and its implementing regulations, 8 C.F.R. § 241.13; (2) third country removal without meaningful notice and opportunity to respond violates the Fifth Amendment's Due Process Clause, the INA, implementing regulations, the Convention Against Torture, and the APA; and (3) the third country removal program imposes punishment without a criminal trial, in violation of the Fifth and Eighth Amendments. (Dkt. No. 7 at 23–27.)

**A. Petitioner's Detention Violates the Fifth Amendment Due Process Clause**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings."

*Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).

*Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

    1. <u>Petitioner has met her burden under *Zadvydas*</u>

Petitioner provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. First, Petitioner has already been detained for more than six months. She was first detained after her 2016 conviction from July 2016 to January 2017—approximately six months. (Dkt. Nos. 15-1 at 3; 15-3 at 2.) Petitioner has been currently detained since April 2025—an additional eight months. (Dkt. No. 15-11 at 2.) In total, Petitioner has been detained for approximately 14 months, making her detention presumptively unreasonable under *Zadvydas*, 533 U.S. at 701. Respondents concede

this in their briefing, acknowledging the "'presumptively reasonable' six-month custody period has expired" in this case. (Dkt. No. 14 at 3.)

Second, Petitioner has shown her removal is not reasonably foreseeable. Respondents have failed to deport Petitioner for seven years, since ICE determined there was no reasonable likelihood of removal in 2018. (Dkt. No. 15-8.) Furthermore, Respondents detained Petitioner in April 2025 without securing a travel document from Vietnam and failed to make any progress toward obtaining one between April and November. (Dkt. Nos. 15-11 at 2; 16 at 4.) More broadly, Petitioner has also offered evidence that the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted. Petitioner provided a declaration from Mr. Tin Thanh Nguyen, an attorney experienced with Vietnam's repatriation process and requirements, that was submitted in *Nguyen*, 796 F. Supp. 3d at 717. (Dkt. No. 1-2.) Mr. Nguyen's practice largely consists of representing Vietnamese nationals, including "liaising with the Government of Vietnam to facilitate the issuance of travel documents." (Dkt. No. 1-2 at 2–4.) Though aware that "Vietnam has issued many more travel documents for pre-1995 individuals than it ever has in the past," Mr. Nguyen contends "that does not mean it is significantly likely that a travel document will be issued for any pre-1995 case." (*Id.* at 3–4.) This year alone, Mr. Nguyen worked on or assisted with nearly a hundred cases of pre-1995 immigrants "for whom ICE has requested travel documents from Vietnam." (*Id.* at 4.) Across these cases, Mr. Nguyen has "yet to see Vietnam issue a travel document within 30 days or less" for a pre-1995 arrival. (*Id.*) Rather, in his experience, "it can take many months to get any answer from Vietnam about whether it will issue a travel document" for these arrivals. (*Id.* at 5.) He explains that "[t]he process [for requesting travel documents] is highly dependent on the individualized facts of each case, including whether the individual has any family remaining

in Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam and came to the United States, among many other factors." (*Id.* at 4.)

Thus, the Court finds Petitioner has met her burden, offering sufficient evidence to show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

2. Respondents have failed to rebut Petitioner's showing

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* Respondents rely on Officer Du's declaration to demonstrate Vietnam is approving travel documents for pre-1995 Vietnamese immigrants. (*See* Dkt. No. 16.)

Officer Du states, seemingly without a sufficient basis, that "[p]revious memoranda of understanding regarding removal of Vietnamese citizens based on their entry date is no longer in effect. The date of entry is no longer relevant regarding whether travel documents can be obtained from the government of Vietnam." (Dkt. No. 16 at 4.) The declaration further stated Vietnam had "agreed to increase cooperation with the United States and generally seek[s] to issue travel documents within 30 days of a request being made." (*Id.*) Officer Du states there have been 569 removals of Vietnamese citizens in 2025 (*id.*) but provides no information regarding the total number of the requests they have recently submitted to Vietnam, whether these involved pre-1996 Vietnamese immigrants like Petitioner, or how many individuals are still awaiting removal despite Respondents' request to Vietnam. Based on Officer Du's recent experience, if a noncitizen does not have documentation of Vietnamese citizenship, "the Vietnamese government will conduct an interview," and "[f]rom the time that a request is made from the local office through to the Attaché the issuance of travel documents is typically within

1–3 months currently due to the high volume of requests." (*Id.*)  Respondents have not provided any underlying documents that might support the assertions in Officer Du's declaration.  Nor have Respondents provided any evidence as to whether Petitioner meets Vietnam's eligibility requirements discussed in the MOU, such as whether Petitioner has Vietnamese citizenship or whether she resided in Vietnam prior to arriving to the United States.  (*See* Dkt. No. 1-1 at 3–4.)

Because there is not a significant likelihood Vietnam will accept Petitioner in the reasonably foreseeable future, her detention is no longer permitted by the INA as construed in *Zadvydas*.  *See* 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.")  Petitioner's detention is unlawful, and her release is appropriate.  *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable).

## B. Petitioner's Third Country Removal Claims Are Not Ripe

Petitioner's other claims for relief challenge the legality of her possible removal to a third country under the Fifth Amendment, the Eighth Amendment, the Convention Against Torture, the Administrative Procedure Act, and the relevant implementing regulations.  (Dkt. No. 7 at 25–27.)  Because Petitioner's claims are not ripe, the Court declines to address her arguments about possible removal to a third country at this time.

Though a habeas petition brought pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of detention pending removal, *see Zadvydas*, 533 U.S. at 688, it cannot be used to seek relief for claims that are speculative or otherwise not ripe for review.  *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985).  For a case to be ripe, the issues presented must be "definite and concrete, not hypothetical or abstract."  *Thomas v. Anchorage*

*Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citing *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).  The ripeness doctrine "prevent[s] courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Anchorage Equal Rights Comm'n*, 220 F.3d 1134 at 1138 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)).  This is because the court's "role is neither to issue advisory opinions nor declare rights in hypothetical cases, but to adjudicate live cases or controversies[.]" *Anchorage Equal Rights Comm'n*, 220 F.3d 1134 at 1138.  "[D]istrict courts properly decline to issue advisory opinions or to declare rights in hypothetical cases rather than live cases or controversies." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025) (citing *Anchorage Equal Rights Comm'n*, 220 F.3d at 1138).

Petitioner makes general assertions that Respondents have designed and implemented a punitive practice of removing individuals to third countries without following procedures required by law.  (Dkt. No. 7 at 25–27.)  But Petitioner has not provided the Court with any evidence that Respondents seek to remove her to any country other than Vietnam.  (*See generally* Dkt. Nos. 1, 7.)  To the contrary, Respondents have attested they have no intent to remove Petitioner to any country other than Vietnam and have begun the process of securing travel documents for her removal to Vietnam.  (Dkt. No. 14 at 9–10.)  At this juncture, Petitioner's claims are too speculative to form a live controversy as to the third country removal issue.  *See Union Carbide*, 473 U.S. at 580; *Tran*, 2025 WL 3140462, at *4 (finding claims of third country removal not ripe where petitioner provided "no evidence that Respondents seek to remove him to a third country").[1]

---

[1] Because the Court finds Petitioner's detention violates the Due Process Clause under *Zadvydas*, and thus affords relief on that basis, it does not reach Petitioner's remaining claims of violation of procedural due process claim or failure to comply with § 241.13.  However, the Court notes

# IV   CONCLUSION

For these reasons, the Court GRANTS the petition for writ of habeas corpus. (Dkt. No. 1, 7.) The Court ORDERS Respondents to release Petitioner from custody immediately, and further, ORDERS that Petitioner may not be re-detained until after an immigration court hearing is held to determine whether detention is appropriate. Within **TWENTY-FOUR (24)** hours of this order, Respondents must provide the Court with a declaration confirming Petitioner has been released from custody.

Dated this 17th day of December, 2025.

David G. Estudillo
United States District Judge

---

Petitioner was arrested by local state police on April 22, 2025 for use of a controlled substance and possession of unlawful paraphernalia, and re-detained by ICE the following day. (Dkt. Nos. 15-10 at 3–4; 16 at 1.) Because Petitioner was notified upon release in 2018 that violation of any "local, state or federal law may result in you being taken back into custody," (Dkt. No. 15-9 at 2), it appears that Respondents did not violate 8 C.F.R. § 241.13(i)(1) in re-detaining Petitioner.